IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  98-cr-0038-JMS-MJD-01 |
|  | ) |  |
|  | ) |  |
| v. | ) | Hon. Jane E. Magnus-Stinson |
|  | ) |  |
| ANTHONY SPRADLEY | ) |  |

## ANTHONY SPRADLEY'S MOTION TO REDUCE HIS LIFE SENTENCE PURSUANT TO SECTION 603 OF THE FIRST STEP ACT

> *"I do not oppose compassionate release for Anthony Spradley. I write this letter out of compassion and as part of the healing process. I write this letter as a man and as a father of a young man whose life was cut short. Anthony was 28 years old when Marcus was killed. He is 51 years old today. Anthony has communicated his deep apology to my family. . . Our discussions have allowed me to forgive him. If you decide that Anthony deserves another chance at freedom, my love for my son Marcus will not stand in the way."*
>
> — Father of Marcus Willis, Edward White (Ex. A)[1]

Anthony Spradley's first felony conviction was a costly one. In 1999, Mr. Spradley received a mandatory life sentence. He has been incarcerated for nearly 23 years. He has no certainty of release.

Nothing about this case is ordinary. Mr. Spradley's involvement in a serious drug conspiracy cost him his life's freedom. A man lost his life. Families have been affected. Mr. Spradley has worked for over two decades to demonstrate that he is not beyond redemption

---

[1]     A copy of Edward White's letter of support is attached as Exhibit A.

and rehabilitation. He has completed 41 prison programs and has worked as a trusted orderly. In many ways, the man Mr. Spradley has become is his profound apology for all of it — the drugs, the mistakes, the harm. It is an apology that he has been making for over two decades without any certainty of release. If given the opportunity to reenter society, he has a sound release plan that includes housing, financial support and a job offer. Most compellingly, the father of the man killed by Mr. Spradley's co-defendant does not oppose Mr. Spradley's release.[2]

While individually persuasive, these facts collectively create extraordinary and compelling reasons for Mr. Spradley's release. Therefore, DEFENDANT ANTHONY SPRADLEY, by his counsel MIANGEL CODY, respectfully moves this Court pursuant to § 603 of the First Step Act of 2018, amending 18 U.S.C. § 3582(c)(1)(A), to reduce his life sentence on Count 1 to 300 months' imprisonment.

## I.    THE FACTS

### A.  The Road to a Life Sentence

> *"I admit my decision-making in the past caused me to regretfully engage in criminal activity within my community."*

> — Statement of Anthony Spradley (Ex. B)[3]

Prior to his life sentence, Anthony Spradley's stiffest penalty was a $2.00 gambling fine. PSR at ¶ 72. Spradley -- the son of a janitor -- came from a poor but striving family. He graduated from high school with decent grades and a hopeful future. Mr. Spradley's road to a

---

[2]     *Id.*

[3]     A copy of Anthony Spradley's letter to the Court is attached as Exhibit B.

life sentence seemed to happen in an instant. He admits that he missed opportunities to right his course along the way. Specifically, Mr. Spradley admits that he was involved in a drug conspiracy that "inflicted harm upon many victims who were negatively affected by drugs that I willingly supplied."[4]

Although it is undisputed that Mr. Spradley was not the shooter, he also acknowledges the sad fact that a man, Marcus Willis, lost his life during the conspiracy. The details of Mr. Willis' demise are worth an explanation, as those facts are relevant to the sentencing disparity discussed *infra*. In 1996, Mr. Spradley opened a local bar and hired Marcus Willis to work as a security officer. PSR at ¶ 16. Unbeknownst to Mr. Spradley, Mr. Willis was also a confidential federal informant. PSR at ¶ 16. Eventually members of the conspiracy soon suspected Willis to be a cooperator. In the summer of 1997, co-defendant Mark White "shot and killed Willis" during a road trip from Atlanta to Indianapolis. PSR at ¶¶ 22 and 30.

Anthony Spradley was not present during Marcus Willis' murder. According to the Presentence Investigation Report, Mr. Spradley was present when the co-defendants cleaned the vehicle and disposed of evidence related to the murder. PSR at ¶ 28.

### B.  The Federal Prosecution

In September 1999, a jury convicted Mr. Spradley of conspiracy to possess with intent to distribute cocaine (Count 1), conspiracy to commit money laundering (Counts 7 and 8), money laundering (Counts 14-17, 19, 20), and engaging in monetary transactions

---

[4]      *Id.*

involving criminal proceeds (Counts 23-25). Sup. Indict. at ECF No. 94. Mr. Spradley was charged, but acquitted of murdering government informant Marcus Willis. PSR at ¶ 1.

Mr. Spradley had only one prior conviction for gambling before his 1999 sentencing. PSR at ¶ 72. That gambling conviction resulted in a $2.00 fine. *Id.* With zero criminal history points, Spradley fell into criminal history category I. PSR at ¶ 73. The drug offense murder cross reference under Guideline § 2D1.1(d)(1) applied to Count 1, increasing his base offense level from 38 to 43. PSR at ¶ 39.[5] He also received a four-point leadership enhancement, resulting in a total adjusted offense level of 47. Under the then-mandatory guidelines, the Court imposed a life sentence on Count 1. Spradley was sentenced to 240 months imprisonment on Counts 7, 8, 14, 15, 16, 17, 19 and 20. He was sentenced to 120 months imprisonment on Counts 23, 24 and 25, with all sentences to run concurrently.

The Seventh Circuit affirmed Mr. Spradley's convictions and sentence in *United States v. Thompson.* 286 F.3d 950 (7th Cir. 2002).[6] Mr. Spradley and his co-defendants Mark White and Dennis Jones appealed the district court's application of the murder cross reference to their guidelines calculation. *Id.* at 958. The Seventh Circuit Court concluded that there was insufficient evidence to apply the murder cross reference provision to co-defendants White and Jones. *Id.* at 959. The Seventh Circuit reasoned that it was not reasonably foreseeable to White and Jones that Willis could be killed with malice aforethought (premeditation), in

---

[5]     The sentencing judge found Mr. Spradley responsible for 550 kilograms of cocaine for the drug conspiracy and attributed $11.5 million to Mr. Spradley for the money laundering conspiracy.  Sent. Tr. at p. 48 ¶ 18 to 20.

[6]     Retired Judge Ann Claire Williams authored the Seventh Circuit's 2002 opinion affirming Mr. Spradley's conviction and sentence. Mr. Spradley's undersigned counsel, MiAngel Cody, clerked for Judge Williams between 2005 and 2006. Attorney Cody had no involvement in his appeal proceedings, which preceded her federal appellate clerkship.

furtherance of the conspiracy. *Id.* Yet, the appellate court found there was sufficient evidence to support the murder cross reference as to Mr. Spradley. *Id.*

Mr. Spradley later moved to vacate, set aside or correct his sentence on Count 1 alleging ineffective assistance of counsel. The district court denied his motion. *United States v. Spradley*, No. 1:04-cv-0055-LJMWTL (S.D. Ind. Oct. 4, 2005). The Seventh Circuit affirmed the decision. *Spradley v. United States*, No. 06-1358 (7th Cir. Aug. 3, 2006). Mr. Spradley sought collateral relief, but his motion was denied. *United States v. Spradley*, No. 1:05-cv-1762-LJMWTL (N.D. Ind. Nov. 28, 2005). The Court denied Mr. Spradley's Amendment 782 motion for a sentence reduction in 2016, correctly finding that his guideline range had not changed. ECF No. 84.

## II.    THE LAW

> *"Under 18 U.S.C. § 3582(c)(1)(A), a court may release a prisoner for compassionate reasons only if, after considering the factors set forth in section 3553(a), it finds extraordinary and compelling reasons."*

> *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021)(quotations omitted)

The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984. See Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984). That original statute gave the Bureau of Prisons ("BOP") exclusive power to make compassionate release motions. It is a power that the BOP has used infrequently and only in the most dire cases. A 2013 report from the Department of Justice's Office of the Inspector General revealed that, on average, only 24 incarcerated people per

year were released on BOP motion.[7] That report concluded that the BOP did "not properly manage the compassionate release program," that its "implementation of the program ... [was] inconsistent and result[ed] in ad hoc decision making," and that it "ha[d] no timeliness standards for reviewing ... requests." *Id.* at 11. These failures were not without consequence. Of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *See United States v. Brooker*, 976 F.3d 228, 231–32 (2d Cir. 2020)(collecting BOP compassionate release statistics).

On December 21, 2018, Congress passed the First Step Act, 132 Stat. 5194. Among numerous other reforms, the Act made the first major changes to compassionate release since its inception in 1984. Chief among these changes was the removal of the BOP as the sole arbiter of compassionate release motions. The Seventh Circuit has declared that Section 603 of the 1SA "allows prisoners to ask courts for compassionate release without needing the BOP to petition on their behalf." *United States v. Cochran*, 833 Fed. App'x. 5, 7 (7th Cir. 2020). Prisoners must first request compassionate release from the BOP, "but they can now access the courts on their own if the BOP fails to respond or if it denies the request and they exhaust their administrative remedies by appealing." *Id.*

The amendments to 18 U.S.C. 3582(c)(1)(A) pursuant to section 603 of the First Step Act were intended to provide relief to a greater number of petitioners. For instance, one

---

[7]     *See* U.S. Dep't of Just. Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last accessed May 24, 2021).

co-sponsor of the First Step Act described this provision as both "expand[ing]" and "expedit[ing]" compassionate release. 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin). Another representative stated that the First Step Act was "improving application of compassionate release." 164 Cong. Rec. H10362 (daily ed. Dec. 20, 2018) (statement of Rep. Jerrold Nadler). Sentiments like these were so widely shared that Congress titled this portion of the First Step Act, "Increasing the Use and Transparency of Compassionate Release." See P.L. 115-391 § 603(b), 132 Stat. 5194, 5239.

The impact has been considerable. Section 603 has resulted in a significantly greater number of releases and reductions in sentences for deserving prisoners. In 2018, only 34 people received compassionate release sentence reductions.[8] After the First Step Act's enactment in December 2018, the BOP reports that approximately 3,414 motions for compassionate release or sentence reductions have been granted.[9] As of May 18, 2021, the BOP reports the following statistics related to the First Step Act, including compassionate release:

---

[8]    U.S. Department of Justice, *Department Of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System, available at:* [ttps://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and](https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and). (last accessed May 18, 2021).

[9]    Federal Bureau of Prisons, *First Step Act, available at:* [https://www.bop.gov/inmates/fsa/](https://www.bop.gov/inmates/fsa/) (last accessed May 18, 2021).



Against this backdrop, there are three questions the Court must answer in each compassionate release case: (1) do "extraordinary and compelling reasons" exist to warrant a sentence reduction;  (2) do the § 3553(a) factors weigh in favor of relief, and finally; (3) is a reduced prison term consistent with any applicable policy statements of the Sentencing Commission. As to the third question, the Seventh Circuit Court of Appeals has stated: The "Sentencing Commission has not yet issued a policy statement 'applicable' to [the prisoner's] request" and "the Guideline Manual lacks any applicable policy statement." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, this brief will address solely the first and second questions for compassionate-release analysis.

# III.   DISCUSSION

A life sentence is categorically severe and extraordinary; that is, according to the Supreme Court.  It "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." *Graham v. Florida,* 560 U.S. 48 (2010) (citing *Naovarath v. State*, 105 Nev. 525, 526, 779 P. 2d 944 (1989)).

A life sentence that is no longer mandatory, particularly when coupled with documented post-sentencing rehabilitation, creates extraordinary and compelling reasons for compassionate release. Here, there are three factors that weigh in Mr. Spradley's favor: (A) Mr. Spradley is serving an unusually lengthy sentence that (B) is no longer mandatorily required under the now discretionary sentencing guidelines, and (C) the father of the murder victim ─ the most egregious fact in his case ─ supports release. In addition, the 3553(a) factors weigh in favor of a reduction.  We discuss these factors in turn.[10]

## A.    Mr. Spradley's Life Sentence is No Longer Mandatory, Creating an Extraordinary and Compelling Reason for Compassionate Release.

Two important factors drove Spradley's life sentence: First, he was required to receive the murder cross reference under Guideline § 2D1.1(d)(1) while, ironically, the actual shooter was not. That guideline provision dramatically increased Spradley's total offense level and guaranteed his life sentence. Second, the guidelines were mandatory at his 1999 sentencing, leaving the Court no choice but to impose a formulaic penalty. Today, the Sentencing Guidelines are no longer mandatory and the Court has its first opportunity to fashion a

---

[10]     Mr. Spradley presents this motion, having exhausted his administrative remedies within the BOP. See Exhibit C.

parsimonious sentence in this case. Mr. Spradley's life sentence, coupled with the abolition of the mandatory guidelines, the length of time he has served, the very unique letter from the murder victim's father, and Spradley's long-documented rehabilitation, collectively create extraordinary and compelling reasons for his compassionate release.

To be sure, Mr. Spradley's argument does not rest on the generalized belief that *every* pre-*Booker* mandatory sentence is an extraordinary and compelling reason for compassionate release. His argument is that a life sentence is categorically different, as the Supreme Court has acknowledged. Indeed, it is well settled that "life without parole is the second most severe penalty permitted by law." *Graham v. Florida,* 560 U.S. 48 (2010)  (citing *Harmelin v. Michigan*, 501 U. S. 957, at 1001 (Kennedy, J., concurring).

In *Graham v. Florida*, the Supreme Court observed:

> [L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence.

*Id.* at 69 (citing *Solem v. Helm*, 463 U.S. 277, 300-301 (1983)).

Mr. Spradley was just 29 years old when he was arrested and ultimately sentenced to life. His young age at sentencing is an additional extraordinary and compelling reason for his release because, when compared to an older man, he will spend a greater balance of his life buried alive. "A 16-year-old and a 75-year-old each sentenced to life without parole receive the same punishment in name only." *Graham,* 560 U.S. at 70-71; *cf. Harmelin v. Michigan*, 501 U.S. 957, 996 (1991) ("In some cases … there will be negligible difference between life

without parole and other sentences of imprisonment — for example, … a lengthy term sentence without eligibility for parole, given to a 65-year-old man"). The net effect of a life sentence on a young person is a "reality [that] cannot be ignored." *Graham v. Florida,* 560 U.S. 48 (2010). This reality is also an extraordinary and compelling reason to reconsider Mr. Spradley's punishment, given this particular defendant and these particular facts.

**B.    A Favorable, but Non-Retroactive Change in Law that Affects a Significantly Lengthy Sentence Can Be an Extraordinary and Compelling Reason for Compassionate Release.**

When Mr. Spradley last stood before the Court, the sentencing guidelines were mandatory and formulaically required a life sentence. No judicial discretion was allowed. That is no longer the case. There has been a significant change in law that no longer necessitates Mr. Spradley's permanent banishment.

The legislative history of the compassionate release statute demonstrates Congress envisioned the mechanism being used to reduce sentences where subsequent revisions to sentencing policies render an imposed sentence unreasonably lengthy. Indeed, the Senate Judiciary Committee contemplated in 1983 that a sentence reduction may be justified in "cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. 98-225, 55–56, 1984 U.S.C.C.A.N. 3182, 3238–39. From its legislative inception, § 3582(c)(1)(A) was considered a judicial safety valve, permitting relief where there might otherwise be no available avenue. See S. REP. 98-225, 121, 1984  U.S.C.C.A.N. 3182, 3304 ("The value of the forms of 'safety valves' contained in this subsection lies in the fact that they assure the availability of specific review and reduction of a term of imprisonment for

'extraordinary and compelling reasons' and to respond to changes in the guidelines."); *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) ("[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." (citation omitted)).

Since the passage of the First Step Act, a number of courts have reduced terms of imprisonment where a change in law undermines the appropriateness of a lengthy sentence. For instance, on facts similar to Mr. Spradley's, the district court granted compassionate release in *United States v. Santamaria*, No. 4:04-CR-00199, 2021 WL 343008 (S.D. Iowa Feb. 1, 2021). The court found the defendant's mandatory life sentence for a drug offense was "objectively inhumane," the law had since changed, and these facts met the extraordinary-and-compelling standard. *Id.* at *4. Granting release, the *Santamaria* court reasoned:

> [I]t is hard to argue that the unfairness of keeping a man in prison for decades more than if he had committed the same crime today is anything other than compelling. This is especially so when Defendant almost certainly would have completed his term of imprisonment by now if sentenced under modern law. Defendant thus presents an "extraordinary and compelling reason[ ]" for a sentence reduction under § 3582(c)(1)(A)(i).

*Id.* The district court granted compassionate release in the *Santamaria* case, and the government did not appeal.

Seventh Circuit precedent supports a finding that a favorable, but non-retroactive change in sentencing law that affects a significantly lengthy sentence can be an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A). In an analogous

scenario, this premise is readily seen in recent compassionate release cases involving stacked gun counts. For instance, in *United States v. Wrice*, the Seventh Circuit vacated and remanded a district court's order denying a compassionate release motion because the order was premised on the court's belief that it lacked the authority to consider the non-retroactive statutory amendments to § 924( c) in deciding whether a sentence reduction was appropriate. 834 F. App'x 267, (Mem)–268 (7th Cir. 2021). Specifically, the panel found the lower court "erred when it held that the Guidelines prohibited it from considering whether a favorable but non-retroactive statutory amendment constitutes an extraordinary and compelling reason" to reduce a sentence. *Id.* Most notably in *Wrice*, the government agreed with appellant Wrice that the district court erred and remand was appropriate. *Id.*

Likewise, in *United States v. Haynes,* the defendant received a *de facto* life sentence of over 100 years' imprisonment for stacked guns. 2020 U.S. App. LEXIS 41462, at *1 (7th Cir. Dec. 18, 2020). Haynes sought ― but was denied ― compassionate release based on the disparity in his pre-First Step Act and post-First Step Act penalties for the 924(c) counts.[11] The Seventh Circuit vacated the district court's denial, holding that a sentence disparity could be considered an extraordinary and compelling reason under § 3582(c)(1)(A). *Id.* On remand, the district court granted the defendant's compassionate release, finding the First Step Act's anti-stacking provision meant he would only face a mandatory 30-year sentence, rather than the 105-year sentence the court had previously imposed. *Id.* at *19. Ultimately in *Haynes*, the disparate     penalties     created     by     a     substantial     change     in     law     met     the

---

[11]     *United States v. Haynes*, No. 4:96-cr-40034, at *4 (C.D. Ill. Nov. 12, 2020) (Doc. No. 159). Haynes was convicted of three counts of robbery in violation of 18 U.S.C. § 1951, three counts of interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952, and six counts of carrying a firearm in violation of § 924(c).*Id.* at 1.

extraordinary-and-compelling standard. *See also United States v. Maumau*, No. 2:08-Cr-00758-TC-11, 2020 WL 806121, at \*5 (D. Utah Feb. 18, 2020), *aff'd,* 993 F.3d 821 (10th Cir. 2021) (granting compassionate release for a defendant's 57 year sentence, finding his "age, the length of sentence imposed, and the fact that he would not receive the same sentence if the crime occurred today all represent extraordinary and compelling grounds to reduce his sentence").

Similarly, the Chief Justice of the Northern District of Illinois has found "th[at] reduced statutory guidelines and . . . post-sentencing conduct" can demonstrate extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). *United States v. Lawrence*, No. 02CR-200-1, at 7 (N.D. Ill. Jan. 8, 2021). In *United States v. Lawrence,* the defendant received a stacked 30-year term of imprisonment for two § 924(c) convictions. *Id.* at 1. Lawrence sought compassionate release on his stacked gun counts, based on the post-1SA sentence disparity and his post-sentencing conduct. The court found that the excessive sentence, change in the law, and post-sentencing conduct constituted extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). *Id.* at 5. The district court granted compassionate release in the *Lawrence* case, and the government did not appeal.

Other district courts have also held that a change in sentencing law combined with evidence of a prisoner's post-sentencing conduct can demonstrate extraordinary and compelling reasons to reduce a lengthy sentence. In *United States v. Clausen,* the defendant received a stacked 213-year sentence for nine stacked gun counts. He sought compassionate release based on his excessive sentence under § 924(c), a change in the sentencing law, and

his remarkable record of rehabilitation. 2020 WL 4260795, at *1 (E.D. Pa. July 24, 2020). The court found that Clausen's "excessive sentence and his demonstrated rehabilitation" presented "extraordinary and compelling reasons to justify a sentence reduction." *Id.* at *7. The district court granted compassionate release in the *Clausen* case, and the government did not appeal.

In *United States v. Rollins*, the court reduced the defendant's life sentence because of the excessive length of his 106 ½ year sentence and his extensive record of rehabilitation. 2021 WL 1020998, at *6 (N.D. Ill. March 17, 2021). The court concluded these facts amounted to "reasons that are beyond what is usual, customary, or regular—that is, reasons that are 'extraordinary' within the meaning of 3582(c)(1)(A)." *Id.* at *17. The court explained:

> [G]iven the plain meaning of the term "extraordinary," it is significant that this particular confluence of events—four stacked 924(c) charges for a first-time offender who exercised his constitutional right to put the Government to its proof at trial—is highly unusual. . . . [A] de facto life sentence far exceeds appropriate punishment. *Id. at* 14.

The district court granted compassionate release in the *Rollins* case, and the government did not appeal.

Indeed, district courts across the country have overwhelmingly continued to grant § 3582(c)(1)(A) relief based on the "stacking" of §924(c) convictions.  See, e.g., *United States v. Burt*, 2020 WL 4001906 (E.D. Mich. July 15, 2020) (reducing sentence to time served after serving 30 years of a 41-year sentence for stacked § 924(c) convictions); *United States v. Adeyemi*, 2020 WL 3642478 (E.D. Pa. July 6, 2020) (reducing sentence to time served based on two § 924(c) where defendant was sentenced to 385 months at the age of 19); *United States v. Lott*, 2020 WL 3058093 (S.D. Cal. June 8, 2020) (reducing a sentence of 423 months based

on stacked § 924(c) convictions to 375 months imprisonment); *McCoy v. United States*, 2020 WL 2738225 (E.D. Va. May 26, 2020) (granting a reduction in sentence from stacked § 924(c) convictions where defendant was sentenced at age 20 to a 421-month term and finding the defendant's relative youth at the time of sentence, overall length of sentence, disparity between his sentence and those sentenced for similar crimes after the First Step Act, and his rehabilitation efforts form extraordinary and compelling bases for relief); *United States v. Williams*, No. 06-CR-50055-(1), 2020 WL 6940788, at *3 (N.D. Ill. Nov. 25, 2020)("The eighteen-year difference in the sentence [defendants] received and the sentence Congress has now deemed warranted for the second § 924(c) conviction supports finding an extraordinary and compelling reason for a sentence reduction."); *Maumau*, 2020 WL 806121, at *6 ("Congress indicated thirty-five years ago that it would be appropriate to provide compassionate releases when sentences are 'unusually long[.]' "); *United States v. Almontes*, No. 3:05-cr-58, 2020 WL 1812713, at *8 (D. Conn. Apr. 9, 2020) ("[C]ourts have considered intervening changes in law as factors contributing to an 'extraordinary and compelling' reason for a sentence reduction under section 3582(c)(1)(A)."); *United States v. Urkevich*, No. 8:03-CR-37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019)("A reduction in [defendant's] sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.").

In another analogous scenario, district courts have granted compassionate release based upon the favorable, but non-retroactive changes to 21 U.S.C. § 851 (the Three Strikes Drug Law). Prior to the First Step Act, a drug offender with at least two prior qualifying

felony drug convictions could face a prosecutorial "three strikes" enhancement mandating a life sentence. The First Step Act lowered that mandatory penalty to 25 years' imprisonment. Many courts have found that the sentencing disparity resulting from changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief. *See, e.g.*, *United States v. Nicholson*, TDC-03-0268, ECF No. 394 (D. Md. May 21, 2021) ("Although the FSA's changes relating to § 851 notices were not made retroactive, neither were the changes relating to the stacking of § 924(c) charges, yet *McCoy*…authorized a sentence reduction under § 3582(c)(1)(A) based on the gross disparity between the defendant's sentence…and the sentence that would be imposed today."); *United States v. Sappleton*, PJM-01-284-3, 2021 WL 598232, at *3 (D. Md. Feb. 16, 2021) (finding that the gross disparity between the mandatory life sentence defendant received in 2002 and the 15-year mandatory minimum term he would face today because of changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief); *United States v. Williams*, 5:12-cr-14, 2020 WL 5834673, at *8 (W.D.Va. Sept. 30, 2020) (finding that the "dramatic reduction under section 401 of the First Step Act to the § 841(b)(1)(A) enhancements [under § 851] constitutes an extraordinary and compelling reasoning warranting a reduction in [defendant's] sentence"); *United States v. Day*, 474 F. Supp. 3d 790, 806-7 (E.D. Va. 2020) (finding extraordinary and compelling reason because "were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence"); *see also United States v. Sweets*,

CCB-04-564, 2020 WL 3073318, at *3 (D. Md. June 10, 2020) (considering the changes to §

851 in deciding to reduce a sentence); *United States v. Turner*, TDC-06-0274, ECF 50 at 3–4

(D. Md. June 28, 2019) (new provisions relating to predicate offenses for § 851

enhancements "support[ ]" the decision to impose a reduced sentence).

An overwhelming number of courts agree that a favorable, but non-retroactive
change in law affecting a lengthy sentence, when combined with other factors, can meet the
extraordinary-and-compelling standard. In *United States v. Jones*, Your Honor granted
compassionate release, noting "if [defendant] were sentenced today, he would be subject to a
mandatory minimum of 10 years on Count 1 rather than the 20-year mandatory minimum
sentence he received." No. 07-CR-00167, 2020 WL 6701314, at *7 (S.D. Ind. Nov. 13, 2020).
There is ample case law ─ including this Court's prior decisions ─ to support Your Honor's
conclusion that (a) Mr. Spradley's mandatory life sentence is objectively inhumane,
particularly given the restorative justice between him and Willis' father. Furthermore, there is
ample case law to support the conclusion that the change in law post-*Booker* and Mr.
Spradley's rehabilitation while serving a life sentence combine to create extraordinary and
compelling reasons.

**C.      The 3553(a) Factors Weigh in Favor of Compassionate Release.**



Because there are extraordinary and compelling reasons to support Mr. Spradley's release, the Court must next "consider[ ] the factors set forth in section 3553(a) to the extent they are applicable" to determine whether a reduced sentence is appropriate and, if so, what that sentence should be. *United States v. Jones*, 2020 WL 6701314, at *6 (S.D. Ind. Nov. 13, 2020) ("In evaluating a motion for compassionate release, the final consideration is whether the § 3553(a) factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence."). Importantly, these considerations are to be assessed against the overarching parsimonious principle that a federal sentence is to be sufficient, but not greater than necessary. 18 U.S.C. § 3553(a).

In this particular case for this particular defendant, the applicable § 3553(a) sentencing factors weigh in favor of reducing Mr. Spradley's life sentence. The factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense,

respect for the law, and just punishment for the offense; (3) to deter criminal conduct; (4) to protect the public from further crimes of the defendant; and (5) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. This brief will address the relevant 3553(a) factors in turn.

### 1. The nature and circumstances of the offense and the history and characteristics of Anthony Spradley.

The instant offense was Mr. Spradley's first felony conviction. Prior to his 1999 sentencing, Mr. Spradley had never served time in prison. His only brush with the law was a $2.00 gambling fine. Yet, when Mr. Spradley stood before the Court, he was required to forfeit the entire balance of his life's freedom because the then-mandatory sentencing guideline scheme demanded it.

In 1999, Anthony Spradley stood before this Court as a young man. He is no longer young, but he is more of a man than he has ever been. He laments that his "behavior was selfish" and that he "inflicted harm upon many victims who were negatively affected by drugs that [he] willingly supplied."[12] Mr. Spradley understands that "simple statements or apologetic pleas, no matter how sincere, will not repair the damage [he has] caused." He is truly remorseful for his conduct and wishes he "could go back in time and speak to [himself]."[13] In his letter to the Court, Spradley reflects:

> Within this place of confinement I have been nourished with constant growth. I have also learned how to shift away from the self-centered instant gratification manner of the irresponsible man that I once represented.[14]

---

[12]   A copy of Anthony Spradley's letter to the Court is attached as Exhibit B.
[13]   *Id.*
[14]   *Id.*

Mr. Spradley has multiple job offers and community support to assist him with his

reentry.



February 22, 2021

To Whom It May Concern,

This letter is in reference to Anthony Spradley's pre-employment verification. I am the owner and operator of Stretch Towing and Recovery in Indianapolis, Indiana. I am fully aware of the charges that Anthony Spradley is currently serving time for and if he is released I have no problem providing him with employment here at Stretch Towing and Recovery.

I believe that he deserves a second chance and an opportunity to be a productive member of society. If any other information is needed feel free to contact me at (317)737-2630.

Sincerely,

Ronnie Paige

Ronnie Paige, owner and operator of Stretch Towing and Recovery in Indianapolis

has offered Mr. Spradley employment, stating that "I have no problem providing him with

employment here at Stretch Towing and Recovery. I believe that he deserves a second chance

and an opportunity to be a productive member of society."[15] Johnny Whitthorne, owner of

JW Construction and Associates in Indianapolis, and instructor for the National Center for

Construction Education and Research states, "If there is anything I can do to help Mr.

Spradley to acclimate back into society I'm here for him because I know what it is like to

---

[15]     A copy of this pre-employment verification letter among other letters of support from community members are attached as Exhibit D.

need a second chance." Pastor Darryl Davis of Ambassador Missionary Baptist Church who has known Mr. Spradley for over 30-years, says that if released "I am eager to aid him in every possible way to rejoin our society, there are several re-entry programs available in our city. I am willing to help Mr. Spradley seek employment and I am ready to give counsel and guidance to help Mr. Spradley to become an up-standing citizen."[16]

Additionally, Kevin Lee, a multi-millionaire music executive, philanthropist and Spradley's longtime friend, is ready to support Mr. Spradley's reentry. Mr. Lee has been featured in a number of major media outlets including Rolling Stone and The New Yorker.[17] Mr. Lee and Mr. Spradley have remained in contact over the years, and Mr. Lee has agreed to provide financial resources to ensure Mr. Spradley has the first year of his housing guaranteed upon his release. This unique and overwhelming support from community members buttresses the extraordinary and compelling reasons to reduce Mr. Spradley's life sentence.

2. **The need for the sentence to promote respect for the law and provide just punishment and effective correctional treatment.**

> *"There is a complicated road between grief and healing. I have been on that journey a long time. . . . After much reflection and healing, I do not oppose compassionate release for Anthony Spradley."*

> — Letter from Edward White dated February 8, 2021 (Exh. A).

---

[16]    Exhibit D.

[17]    *See* publicity and articles concerning music executive and philanthropist Kevin Lee *available at*:
https://www.newyorker.com/magazine/2017/12/18/how-coach-k-guides-atlantas-hip-hop-stars (last accessed June 2, 2021) and
https://www.rollingstone.com/music/music-news/a-number-one-radio-hit-costs-200000-according-to-one-label-head-890883/ (last accessed June 2, 2021).

It is extraordinary and compelling that the father of the person killed in this case does not oppose Mr. Spradley's release. It is not by happenstance, however. Mr. White's letter to Your Honor is the culmination of honest and heartfelt communication between the men.

Mr. Spradley was 28 years old when Marcus Willis was killed. He is 51 years old today. Mr. Spradley reached out to Mr. White to apologize and begin the healing process. He did so with no ulterior motives or certainty that he would ever be released. Mr. White writes to Your Honor:

> *Anthony has communicated his deep apology to my family. . . Our discussions have allowed me to forgive him. If you decide that Anthony deserves another chance at freedom, my love for my son Marcus will not stand in the way.*
>
> — Letter from Edward White dated February 8, 2021 (Exh. A).

There is a remarkable and rare opportunity for restorative justice in this case. That weighs in favor of judicial compassion.

As to the need for further vocational and correctional treatment, Mr. Spradley completed his GED within months of entering the BOP. He has not stopped improving himself over the past two decades of incarceration. Spradley has taken courses that position him for employment, if he is ever released from prison. He has taken over 280 hours of masonry training, over 100 hours of blueprint reading, and forklift training.  He has completed over 40 educational courses, totaling over 700 hours of rehabilitative programming.[18] The job offers presented to the Court in his release plan are congruent with the education, training and skills that Mr. Spradley has acquired during his 23 years of incarceration.

---

[18]     *See* 2020 BOP Report at 1, attached as Exhibit E.

To be sure, this Court would be rightly concerned about releasing any prisoner who presents a danger to the community. The best evidence of Mr. Spradley's lack of dangerousness is the type of work the BOP has chosen him to perform during his imprisonment.  BOP records indicate that Mr. Spradley is currently assigned to Electric 1, a job that entrusts him with potentially dangerous tools.[19] Mr. Spradley's work assignments suggest the BOP does not believe he presents an institutional danger to himself or others. This institutional record is similar to Your Honor's prior case *United States v. Davis*, No. 2:15-CR-00019-JMS-CMM, 2020 WL 7138645 (S.D. Ind. Dec. 7, 2020). In *Davis*, the Court granted compassionate release, reasoning the defendant "ha[d] no prior felonies, he ha[d] maintained clean conduct over more than 5 years of incarceration, and ha[d] completed various programming, including a drug treatment program." *Id.* at *6. The Court held the 3553(a) factors in *Davis* suggested the defendant "would not present a danger to the community or to another person if he were released." *Id.* Here too, Mr. Spradley's BOP work history and record are highly indicative that he would not present a danger to the community or another person if he were released.

### 3.  The need to avoid unwarranted sentencing disparities.

Indisputably, the most egregious fact in this case is the unfortunate death of Marcus Willis. According to the PSR, Willis was murdered by Mark White while the two men were riding in a car. PSR at ¶ 22. At his pre-*Booker* sentencing, the court applied the murder cross reference to co-defendant Mark White, co-defendant Dennis Jones, and Spradley. All three men were sentenced to life imprisonment on Count 1. All three appealed the sentencing

---

[19]     *Id.*

judge's application of the murder cross reference. *United States v. Thompson*, 286 F.3d 950, 956 (7th Cir. 2002). The Seventh Circuit Court of Appeals reversed the appliction of the murder cross reference to Jones and White, but not to Mr. Spradley. *Id.* at 959. On remand, the court resentenced White to 480 months imprisonment. *See United States v. White*, 406 F.3d at 827, 831 (7th Cir. 2005).

There is an unwarranted sentencing disparity at the heart of this case. Mark White was convicted of killing Marcus Willis; he is serving a sentence of 40 years' imprisonment. Mr. Spradley did not kill Willis (though he did dispose of evidence after the fact); he is serving a sentence of life imprisonment.

Your Honor recently denied co-defendant Mark White's First Step Act motion, finding his involvement in the murder to be "extremely serious" and warranting "a significant sanction." Ultimately, Your Honor concluded the 3553(a) factors did not favor a reduction of White's sentence because his "480-month sentence was appropriate when it was imposed, and the Court continues to conclude that that sentence is sufficient, but not greater than necessary." *United States v. White*, 1:98-cr-0038-JMS-MJD, at 17 (S.D. Ind. April 13, 2021) (Doc. No. 207). According to BOP records, White is scheduled to be released on November 9, 2032.[20] Despite Mr. Spradley not being the shooter and having a lower criminal history than his co-defendant, he received a harsher sentence than White who pulled the trigger. Fortunately, that unwarranted sentencing disparity is no longer required or permissible.

---

[20]     This information is taken from the BOP's inmate locator: https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last accessed June 4, 2021)

This Court recently granted compassionate release to co-defendant Willie Boddie, reducing his sentence to time served. Dennis Jones received a 350-month term of imprisonment after an appeal of his life sentence on Count 1, and he was released on October 30, 2015. Ellis Walker received a 327-month term of imprisonment for his involvement in the conspiracy and he was released on March 7, 2016. Martino Perkins pleaded guilty to Count 1 and received a sentence of 70-months incarceration. PSR at ¶ 06. Alfred Edmonson pleaded guilty to Counts 1 and 8, and he received a sentence of 60-months imprisonment. PSR at ¶ 12.

## IV.    CONCLUSION

It is difficult for undersigned counsel to stop writing this brief. Admittedly, the case is a heavy lift with hard facts. The magnitude of the life sentence is outweighed only by the character of person counsel has come to know and represent. Counsel has cited as many cases, statutes, and facts as she can find; that is what lawyers do. Perhaps the Court may find Mr. Spradley's own words to be the most compelling evidence to support his compassionate release. Counsel, therefore, submits a recorded statement of Mr. Spradley here: https://youtu.be/et4C0ObPwlg and a copy of this electronic Exhibit will be filed with the Clerk's office.

Mr. Spradley has made a choice every day for the last two decades to improve himself, learn a trade, and hope for the possibility that someday he might be able to present a different person to Your Honor. He does so today.

Mr. Spradley's life sentence, the abolition of the mandatory guidelines, the statement of the victim's father, the length of time he has served, and his documented rehabilitation, collectively create extraordinary and compelling reasons for his compassionate release.

Respectfully submitted,

/s/ MiAngel Cody
MIANGEL CODY
TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Anthony Spradley*

## CERTIFICATE OF SERVICE

The undersigned, MiAngel Cody, an attorney with The Decarceration Collective Law Office, hereby certifies that on June 11, 2021, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**ANTHONY SPRADLEY MOTION TO REDUCE HIS LIFE SENTENCE PURSUANT TO SECTION 603 OF THE FIRST STEP ACT**

/s/ MiAngel Cody
MIANGEL CODY

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605
*Counsel for Anthony Spradley*

Exhibit A

United States District Court
Southern District of Indiana
46 E Ohio St.
Indianapolis, IN 46204, United States

Date: February 8, 2021

Dear Judge Magnus-Stinson,

You probably don't receive a lot of letters like mine.  I never imagined that I would write this letter. It has taken almost a quarter century of pain and healing for me to say what I am about to say. My name is Edward White. I am the father of Marcus Willis. My son Marcus was murdered on June 27, 1997.

Marcus was a loved son, a grandson, a brother, a friend. "Marcus had a big heart." He loved to spend time with his family, especially my mother—his grandmother.

Anthony Spradley did not pull the trigger that killed Marcus. But I continue to believe he was involved in some way in my son's death. There is a complicated road between grief and healing. I have been on that journey a long time. For years, I was angry that Marcus is gone. You never just "get over" losing a child. It has been nearly 25 years since Marcus was taken from our family. That loss is still deep. I think about Marcus every day and my love for him remains strong.

After much reflection and healing, I do not oppose compassionate release for Anthony Spradley. I write this letter out of compassion and as part of the healing process. I write this letter as a man and as a father of a young man whose life was cut short. Anthony was 28 years old when Marcus was killed. He is 51 years old today. Anthony has communicated his deep apology to my family.  I have spoken to Anthony on several occasions and I take him at his word. Our discussions have allowed me to forgive him. If you decide that Anthony deserves another chance at freedom, my love for my son Marcus will not stand in the way.

I hope you consider this letter. It is written with compassion as I see it. It is written with compassion as I live it.

Sincerely,

Edward White
470-331-7244

Exhibit B

Dear Miss, Jane E. Magnise-Stenson

I write you today to provide you with the understanding of who Anthony Spradley was in the Pass - and who the man is that he has become to be.

My name is Anthony Spradley, I am a non-violent federal drug offender incarcerated at the Federal Correctional Institution Leavenworth. This personal correspondence is in support of my 3582 (c)(1)(A)(i) motion

I have been incarcerated and separated from my family since 1998, after being sentenced to life imprisonment in federal custody. I admit my decision-making in the past caused me to regretfully engage in criminal activity within my community. My behavior was selfish, but I attempted to justify my actions through false sentimentality towards my family, and within my community. I also found other excuses to validate my appetite for presenting a false image of a man, which I am not destined to become.

I now realize I eternally inflicted harm upon many victims who were negatively affected by

drugs that I willingly supplied. My family's well-being was harmed and they continue to experience emotional pain due to my actions of atrocious behavior. I know simple statements or apologetic pleas, no matter how sincere, will not repair the damaged I've caused. but, I must honestly tell you, "I am sorry for committing the criminal act of selling drugs"... I'm asking for forgiveness, as I am trying to forgive myself... It is my prayer you will deem me a worthy candidate for exercising your power to give me a second chance at life...

Before we go any further - I want to make it known that I was a non-violent drug offender. I never was a violent person. during that 9 week trial, there was not one person that got on that stand and said that I had done any violent crimes or that I was a violent person. there is a reason for that. the reason is - I'm not... It's not my character. I feel sorry for the victim, and his family. I really do. one thing I can say is that I'm a thinking man, a non-violent thinking man. when I heard about him being a "CI", yes I went and asked him about it. I can't say that I believed him but the one thing I do know is that I never sold him any drugs,

he had never seen me with any drugs, and I never talked in front of him about any drugs. the only thing he done with me was paid bills for me, worked at the club, and rode out of town with me. now me being the non-violent drug dealer, that is a thinking man - my question to you is why would I want to harm him? he can't hurt me in any kind of way... one thing I can do - I can think, and I'm not a violent person. I received this murder cross reference enhancement because I was asked to find out about that situation that I have nothing to do with. I was a drug dealer - not a murderer. the murder game is not my lane.

Now as far as my drug activity - you got me there. I can't deny that. I sold drugs, but as of today, I regret the actions which caused my imprisonment. I openly accept responsibility for my involvement with selling drugs today. Unfortunately I was a product of my environment. at the time of my criminal offenses, I was 28 years of age very immature and unaware of the realities and grave consequences of selling illegal drugs, as well as the adverse effects drugs have on the citizens who purchased the contraband. during them

times, I didn't know any other way.

Within this place of confinement, I have been nourished with constant growth. I have also learned how to shift away from the self-centered, instant gratification manner of the irresponsible man that I once represented.

I continuously take the appropriate steps necessary to productively apply righteous behavior in every aspect of my grounded modesty. My prison record over the last several years will attest to the truthfulness of this correspondence. None of us are perfect... It's hard in here, and we are under some strange times.

After the mistakes I have made and enduring hardship suffered as a result of my pass, I wish I could go back in time and speak to myself.

I would talk about the wanted ease, comfort, and a pleasurable life style the fast, and easy way. In the drug game, nothing worth having will ever come easy, and nothing that comes from the drug game is sincere. I will tell him, the crazy thing about the drug game

is we try to impress people who don't like us, or care for us in any kind of way. With that being known, anything worth having will forever require effort. The price of true success is believing that no matter what the outcome is, you applied the best of who you are until the end. If you give it your best try, and apply yourself in the same manner as you did selling drugs - there is no way you won't succeed. It maybe slow - but it's for sure... you will be comfortable, not having to look over your shoulder for the law to take everything you have, and away from your family... seeking to be comfortable will stagnate growth. Comfort feels good in the short term, but to grow one must have challenges and be willing to accept being uncomfortable. The opportunity of learning who you are come from challenges and discomfort. You learn to be comfortable being uncomfortable and that requires the practice of hope, and all pleasure ain't good pleasure. "Hellen Keller" said - character can not be developed in ease and quiet. Only through experience of trial and suffering can the soul be strengthened, ambition inspired, and success achieved...

take It from experience. I have been through It so you don't have to go through It. What I have been through, what I have seen, and what I have felt have turned me Into a complete reflection of a man standing on the proper Morals and principles... There Is no chance whatsoever that at my advanced age, can or will return to criminal behavior In the future upon modification of my sentence.

I ask you Anthony today, was prison the Life style you expected It to be when you pursued the fast and easy Life-style at 28?

NO It's not and I wish I would have had this conversation with you when I was younger...

I am seeking freedom to relieve my family of the hardship that I bestowed upon them through my criminal acts. I am seeking to restore every ounce of damage that I Inflicted throughout my community with every Victim affected by my past behavior

I am very family-oriented. I have strong ties within my community and respectable relationships with prominent citizens of our society. I have taken

the proper steps to apply myself
by taking full advantage of
programs and rehabilitative ser-
vices offered by the Federal Bureau
of Prisons.

I have also come to realize
I am far from above the law. It
has taken a deep sense of recon-
struction within my understanding
for me to truly become a firm
believer that I must abide by
the laws of the United States,
as does everyone else.

I have a son who struggles
with existence in a crime-ridden
area of Indianapolis, Indiana. As
you may guess, he desperately
needs assistance, guidance, love
and support from his father so as
not to become a burden to the
federal government. I am also
a grandfather, because my son
has 7 children, (yes you heard me
right "7") who are unfortunately
being deprived of the opportunity
to receive encouragement from
their grandfather to become
successful members of society.
I desire an opportunity to
demonstrate to my son and
grandchildren the negative impact
that criminal activity could have
upon their lives and freedom.

Also, my Mother's health is
failing, and there are no family

members actively supporting her during medical crisis, or ensuring that she attends scheduled medical appointments and takes her medication at prescribed times. I will be able to assist my mother in her advanced years by providing financial support for her, instead of causing the federal government to be my Mother's sole source of support.

Likewise, I am concerned about the youth of today. I have begun corresponding with some people about linking up with some federal agencies in an effort to create a non-profit organization which will assist inner-city youth with refraining from gang association, crime, drug dealing, while also helping to reduce the national drop-out rate of students from high school. What better person than me to push it? I truly have a story to tell that will touch so many, for I have seen the good, and the bad. I intend to utilize my mentoring skills which I learned via "My Brother's Keeper II" while incarcerated to assist those in need of help.

I have a good paying job lined up for me upon my release, that will keep me afloat until I can get my business up and running

I don't want to be subject to Covid, and lose my life. It's getting bad in these prisons.

I am very remorseful for committing the criminal act's which have resulted in my present criminal conviction's. Therefore, I have availed myself of all pertinent programming offered by the federal Bureau of Prison's, to prepare me for the return to the community. This will prevent me from being subjected to dying in a federal Correctional Institution.

I ask that you find me to be worthy of freedom. If you do so, I can assure you only positive things will come from me. You will hear my name, and conclude you gave me a second chance at life, and I am a person that the America's citizen's can be proud of.

In advance, I Thank you for considering my application for freedom, while remaining optimistic concerning your forthcoming response.

Respectfully your's,

Anthony Spradley

Honorable Barack H. Obama
President, United States of America
    c/o Office of the Pardon Attorney
1425 New York Avenue, Northwest, Suite 11000
Washington, D.C. 20530

Dear Mr. President:

My name is Anthony Spradley. I am a non-violent federal drug offender incarcerated at the United States Penitentiary, Pollock, Louisiana. This personal correspondence is in support of my clemency petition, which I have filed with the Office of the Pardon Attorney.

I have been incarcerated and separated from my family since 1998, after being sentenced to Life imprisonment in federal custody. I admit my decision-making in the past caused me to regretfully engage in criminal activity within my community. My behavior was selfish, but I attempted to justify my actions through false sentimentality towards my family. I also found other excuses to validate my appetite for presenting a false image of a man, which I am not destined to become.

I now realize I eternally inflicted harm upon many victims who were negatively affected by drugs that I willingly supplied. My family's well-being was harmed and they continue to experience emotional pain due to my atrocious behavior. I know simple statements or apologetic pleas, no matter how sincere, will not repair the damaged I've caused. But, I must honestly tell you, *I am sorry for committing criminal acts,* and it is my prayer you will deem me a worthy candidate for exercise of your clemency power.

Within this place of confinement, I have been nourished with constant growth. I have also learned how to shift away from the self-centered, instant gratification manner of the irresponsible man that I once represented.

I continuously take the appropriate steps necessary to productively apply righteous comportment in every aspect of my grounded modesty. My prison record over the last several years will attest to the truthfulness of this correspondence.

I am seeking clemency to relieve my family of the hardship that I bestowed upon them through my criminal acts. I am seeking to restore every ounce of damage that I inflicted throughout my community with every victim affected by my past behavior.

I am very family-oriented. I have strong ties within my community and respectable relationships with prominent citizens of our society. I have taken the proper steps to apply myself by taking full advantage of programs and rehabilitative services offered by the Federal Bureau of Prisons.

I have also come to realize I am far from above the law. It has taken a deep sense of reconstruction within my understanding for me to truly become a firm believer that I must abide by the laws of the United States, as does everyone else

1

I have a 21 year old son who struggles with existence in a crime-ridden area of Indianapolis, Indiana.  As you may surmise, he desperately needs assistance, guidance, love and support from his father so as not to become a burden to the federal government.  I am also a grandfather, because my son has three (3) children, who are unfortunately being deprived of the opportunity to receive encouragement from their grandfather to become successful members of society.  I desire an opportunity to demonstrate to my son and grandchildren the negative impact that criminal activity could have upon their lives and freedom.

Also, my mother's health is failing, and there are no family members actively supporting her during medical crisis, or ensuring that she attends scheduled medical appointments and takes her medication at prescribed times.  I will be able to assist my mother in her advanced years by providing financial support for her, instead of causing the federal government to be my mother's sole source of support; thus, taxpayers will also benefit if clemency is granted.

Likewise, I am concerned about the youth of today.  I have begun corresponding with federal agencies in an effort to create a non-profit organization which will assist inner-city youth with refraining from gang association and crime, while also helping to reduce the national drop-out rate of students from high school.  I intend to utilize my mentoring skills which I learned via My Brother's Keeper II while incarcerated to assist those in need of help.

I have prepared manuscripts for children's books to encourage young people to attend school, stay out of trouble and become productive members of society.

I am very remorseful for committing the criminal acts which have resulted in my present criminal convictions.  Therefore, I have availed myself of all pertinent programming offered by the Federal Bureau of Prisons to prepare me for return to the community. This will prevent me from being  subjected to dying in a United States penitentiary.

I ask that you find me to me worthy of clemency.  If you do so, I can assure you *only* positive things will come from me and, upon your return to Chicago, you will hear my name and conclude I am a person that you and America's citizens can be proud of.

In advance, I thank you for considering my application for clemency, while remaining optimistic concerning your forthcoming response.

Respectfully yours,

_____

ANTHONY SPRADLEY, Applicant
Register Number - 05772-028
United States Penitentiary
Post Office Box 2099
Pollock, Louisiana 71467-2099

Exhibit C

**From:** ^l"SPRADLEY, ^lANTHONY D" <05772028@inmatemessage.com>
**To:**
**Date:** 5/2/2020 1:34 PM
**Subject:** ***Request to Staff*** SPRADLEY, ANTHONY, Reg# 05772028, LVN-A-D

To: Warden
Inmate Work Assignment: N/A

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.
313cd511-2b24-40df-982a-b3dd8051592d
Your response must come from the departmental mail box.  Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***


This email is in regards to me requesting for you to please file a motion with my sentencing court on my behalf for compassionate release/reduction in sentencing pursuant to program statement :
No: 5050.50 ←  compassionate release/reduction in sentence. procedures for implementation of 18 USC 3582 (c)(1)(a), and 4205 (g) provides guidance on the type of extraordinary and compelling circumstances.

I'm 51 years of age, and have been incarcerated since 4-8-98. (22years). this is the first case of my life. i had received a life sentence for violating these statues :
(1) conspiracy to possess with intent to distribute cocaine
(2) conspiracy to commit money laundering
(3) money laundering
(all non-violent crimes)

Over the years both congress and the supreme court have acknowledge specific changes in the law as referenced in the following cases.
(1) Apprendi v. New Jersey
(2) United States v. Booker
(3) Alleyne v. United States

These supreme court decisions have clearly held that it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed - and that all "such facts must be established by proof beyond a reasonable doubt".

In View of the fact that my sentence was determined in the absence of no drug amount from the jury. please be mindful that neither of these enhancements were charged in my indictment. (1) murder cross-reference  (2) leadership role
the grand jury did not indict me on these charges, nor were there prosecutor's able to prove beyond a reasonable doubt to the jury that i was guilty of such things. after the prosecutors failed to convince the jury that i was guilty of murder beyond what i was found guilty of by considering acquitted conduct during my sentencing. based on judge-made findings. (which is unconstitutional today). the judge sentence me to life imprisonment, (this is my first case of my life).  that's more than i would have  faced based on the jury's verdict alone. the contention that the sentencing enhancements had exceeded the sentence authorized by the jury's verdict is in violation of the Sixth Amendment.

My reason for the compassionate release/reduction 5050.50 - 18 USC 3582 (c)(1)(a), and 4205 (g) is because of the fact that it is unconstitutional to remove from the jury the assessment of facts that increase

**RESPONSE TO INMATE REQUEST TO STAFF MEMBER**
**(COP-OUT)**

Inmate's Name: **Spradley, Anthony**
Reg. No.:        **05772-028**
    Unit:        **ACH**
    Cell:        **A07-419L**


This is in response to Inmate Request to Staff, in which you
request consideration for a Compassionate Release/Reduction in
Sentence (RIS) in accordance with Program Statement 5050.50.
Specifically, you request a Compassionate Release/RIS stating it
was unconstitutional to remove the jury from the assessment of
facts that prescribed the range of penalties.

In accordance with Program Statement 5050.50, Compassionate
Release/Reduction in Sentence, Procedures for Implementation, 18
U.S.C. 3582(c)(1)(A) and 4205 (g), an inmate may initiate a
request for consideration only when there are particularly
extraordinary or compelling circumstances.  The circumstances
the Bureau of Prisons considers are under the following
criteria:

- Terminal Medical Condition
- Debilitated Medical Condition
- Non-Medical Circumstances-Elderly Inmates
- Elderly Inmates with Medical Conditions
- Death or Incapacitation of the Family Member CareGiver
- Incapacitation of  Spouse or Registered Partner

As your request is regarding an issue with the court, it does
not fall under the jurisdiction of the Bureau of Prisons.  You
must file your appeal with the court.  Therefore, your request
for a Compassionate Release/RIS is hereby denied.

.If you are dissatisfied with this response, you may appeal the
decision through the Administrative Remedy process.

_____                    5.20-2020
                                           _____
D. Hudson, Warden                          Date

LVN-1330.16
03/02/2009
Attachment A

## Administrative Remedy – Informal Resolution
### Leavenworth, Kansas

Inmate's Name: Anthony Spradley   Reg. No. OS772-028   Unit: A-2   Date: 8-24-20

NOTICE:   You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your Counselor. Please follow the three (3) steps listed below.

1. State your specific complaint: I'm requesting for you to please file a motion with my sentencing court on my behalf for compassionate release/reduction in sentencing pursuant to program statement no: 5050.50-Compassionate release/Reduction In sentence. Procedures for Implementation of 18USC 3582(c)(1)(A) and 4205(g) Provides guidance on the type of extraordinary, and compelling circumstances.

"over"

2. State what efforts you have made to informally resolve your complaint: This Is my first effort.

3. State what resolution you request: To get a 3582 motion filed on my behalf.

4. Correctional Counselor's Comments (Step to Resolve) This is something I can not resolve at my level. Referring you to a BP-9.

Counselor's Signature: _____   Date: 082420

Unit Manager's Review: _____   Date: 8/24/20

|  | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk. |
|---|---|---|---|---|
| Date | 082420 | 091420 | 091420 | 091420 |
| Time | 1300 | 1200 | 1200 | 1645 |
| Counselor | Drinkard | Drinkard | Drinkard | Drinkard |

U.S. Department of Justice

Federal Bureau of Prisons

**Administrative Remedy
Part B - Response**

---

**Administrative Remedy Number: 1048029-F1**

---

Your Request for Administrative Remedy, dated September 14, 2020, and received in this office on September 21, 2020, has been reviewed. In your remedy, you appeal the denial of your Compassionate Release Request. Specifically, you state the Warden is utilizing an obsolete policy when considering your request.

A review of your file reveals on August 25, 2020, your request for Compassionate Release was denied. There has not been any changes to the circumstances of your request for Compassionate Release. The current Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. 3582(c)(1)(A) and 4205 (g), dated January 17, 2019, was utilized.

Therefore, your request is hereby denied.

In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                    10/16/20
D. Hudson, Warden                            Date

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number:**   1071678-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on March 15, 2021, in which you contend you have been inappropriately denied consideration for a reduction in sentence (RIS).   For relief, you request reconsideration in light of the COVID-19 pandemic.

We have reviewed your appeal and documentation.   A request for reduction in sentence under 18 U.S.C. § 3582 (c)(1)(A) will be considered when there are extraordinary and compelling reasons which warrant the reduction, there is no danger to the safety of any other person or to the community, and the reduction is consistent with policy.   As indicated in the Warden's response, your request was evaluated by staff at the United States Penitentiary Leavenworth, Kansas.   In making the decision, staff thoroughly reviewed your records and found your circumstances did not meet the policy requirements as outlined in Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C §§ 3582 and 4205 (g).

The Federal Bureau of Prisons is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates.   We recognize that you have legitimate concerns and fears about the spread and effects of the virus.   However, your concerns about being potentially exposed to, or possibly contracting, COVID-19 does not warrant an early release from your sentence.   As such, your Compassionate Release request is denied at this time.   Accordingly, the institution's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

03/25/21
Date

Barb von Blanckensee, Regional Director

Exhibit D



**Licensed & Insured**
Good. Fast. Dependable. Quality Service.

4806 East 30th Street, Ste. 1
stretchtowing@yahoo.com | www.teamstretchtowing.com

February 22, 2021

To Whom It May Concern,

This letter is in reference to Anthony Spradley's pre-employment verification. I am the owner and operator of Stretch Towing and Recovery in Indianapolis, Indiana. I am fully aware of the charges that Anthony Spradley is currently serving time for and if he is released I have no problem providing him with employment here at Stretch Towing and Recovery.

I believe that he deserves a second chance and an opportunity to be a productive member of society. If any other information is needed feel free to contact me at (317)737-2630.

Sincerely,

Ronnie Paige

 **JW Construction And Associates LLC**

To whom it may concern,

My name is Johnny Whitthorne and I'm the owner of JW Construction And Associates LLC in Indianapolis, Indiana. I've been knowing Anthony Spradley since we were kids. Through the years I've had my run ins with the law but I've changed my life through the grace of God and started my own company in 2006. If there is anything I can do to help Mr. Spradley to acclimate back into society I'm here for him because I know what its like to need a second chance. I'm a certified teacher for NCCER I also am a certified apprenticeship through the Department of Labor. If there is any questions or concerns please feel free to contact me at 317-999-0579.

Thanks in advance, Johnny Whitthorne

Johnny Whitthorne
02/01/2021



**Pastor Darryl E. Davis Sr.**
2301 N Arsenal Ave. | Indianapolis, Indiana 46218
Church Office: (317) 925-2457
Pastor Davis Direct: (317) 250-9684

February 6, 2021

To Whom It May Concern,

My name is Pastor Darryl E. Davis, Sr., Pastor of Ambassador Missionary Baptist Church.  I am sending this letter on the behalf of Mr. Anthony Spradley a young man in which I have known for over 30-years plus.  If Mr. Spradley is released, I am eager to aid him in every possible way to rejoin our society, there are several re-entry programs available in our city.  I am willing to help Mr. Spradley seek employment and I am ready to give counsel and guidance to help Mr. Spradley to become an up-standing citizen.

I thank you in advance for considering his freedom.

Darryl E. Davis, Sr.
Pastor

Darryl E. Davis Sr.

February 23, 2021

Judge Magnus-Stinson
United States District Court
Southern District of Indiana
46 E Ohio St.
Indianapolis, IN 46204, United States

Dear Judge Magnus - Stinson

My name is Michelle Brown-Rozier. Anthony Spradley and I share his only child Anthony Jr. and 7 grandchildren. My life has not been easy since Anthony was sent to prison. I lost my main source of income due to a fire last year and with COVID our lives have been turned upside down. I had been a beautician all of my adult life which made it easier to maintain. Now that I have full time job and have a fixed income I don't have as much free time to tend to our son or help with our grandchildren.

I know with Anthony having his freedom will allow him to be here for his family. Anthony has always had a big heart and lives for the day to be free again to show the world how great he can be thru his faith. Anthony is more humble and level minded now than ever before. Anthony regrets that he was so talented in business and life yet used his skills on the wrong side of the law. Anthony has spent the last two decades reading, learning and praying for his healing. Anthony apologizes all of the time for all of his wrongs. I spent the most time with him and knows where his heart was even during the time he was free. Anthony had a plan to move away and build a nice life for us and his family thru real estate and other business investments.

Upon Anthonys release the people in his life including me will do any and everything to help him. We are all planning and putting our resources together to allow him to have a better life. Anthony refuses to look back or let any of us down. He is already in love with all of his grandkids and cannot wait to spend time til them and his family. Anthony has a different group of peers who support him and keep him grounded. Anthony's time in prison has shown him discipline and not to take anything for granted. Anthony has been an ideal prisoner, the same as he would be when he comes home.

We were all young and wanted the best in life we just didn't know how to do achieve it back then. I know Anthony knows now the hard work and dedication it will take to be back in the community and be able to be home to love all of his family. Anthony just wants to work hard and enjoy the rest of his life and freedom.

Sincerely-
Michelle Brown - Rozier
4640 Cherry Lane Indianapolis, IN 46228 Cell: 317-679-1752

February 21, 2021

Judge Magnus-Stinson
United States District Court
Southern District of Indiana
46 E Ohio St.
Indianapolis, IN 46204, United States

My name is Patricia Johnson. I am Anthony Spradley's Mother. Anthony is the oldest of my 5 children, one deceased. I am writing as many others have to ask for my son's compassionate release. My son has served over the usual amount of time given for the crime he was found guilty of. Anthony has been incarcerated since April 8, 1998. It is going on 23 years this April 2021.

Anthony is the kindest of all my children, he is truly special. He is sorry for his wrongs and does not like being called "Kingpin or Ring Leader", that was not his intention. Anthony's would not harm a fly. Anthony cares about his family and community. When he was in the streets so many people had so many good things to say about my son because he gave to everyone. Anthony helped family, friends and strangers. Anthony has had several decades to go back and think again about how he helped and wants to do the same thing in a positive way. Anthony would never do anything illegal again and has too many people around to help him never return to crime to be able to help others.

I have visited Antony and spoken to him several times over the years. All Anthony does is worries about how he has affected me and his siblings by not being present in their day to day life. Anthony has only son and 7 grandchildren. All my son wants to do is be here and help me with my Lupus, be a father, grandfather, Uncle and brother. Antony writes beautiful letters to all of his family, nieces and nephews encouraging them to stay in school, read and be good citizens.

I have Lupus, my sister is ill, my brother has cancer now and all my son does is worries about our health. My sister, brother and nephew all recently passed away which has been hard on all of us. My son loves family and we all love him. We would all do anything we could to help him spiritually and financially when he comes home.

Anthony has shown interest in his NonProfit. It's Not JussTuss in hopes to reach others. He knows how the world has changed so much and how he grew up in Indianapolis. Anthony often speaks to his Pastor and other leaders in the community who know if he was free he could guide a lot of the men to do better with their lives. I have seen how he has spoken to people since he has been incarnated and made a big difference in their lives. I witnessed person after person tell stories when the documentary was being filmed about the goodness of my son's heart. Anthony is well loved, he been offered employment and housing.

I pray God let's him have another chance at life to do his work. I know none of us will let him fail again and will all be by his side. None of the guys he was arrested with who have been released have ever went back to jail or prison. My other son Anthony Thompson has been home now 4 years and has not had any issues. My son has had a good track record in prison to show how remorseful he is and how good he will be back in the community.

Thank you for you time.

Patricia Johnson
2115 Eliza Lane Apt 706
Indianapolis IN 46218
317-413-3748

Patricia Johnson

United States District Court

Southern District of Indiana

46 East Ohio St.

Indianapolis, Indiana, 46204 United States

February 9, 2021


Dear Judge Magnus Stinson

I am humbly requesting you Grants Anthony Spradley's Motion for compassionate release, asking that he be released from the federal prison system, Anthony has been serving time since the age of twenty-eight years (28) of age, I am currently one of Anthony's closest friends and I'm currently residing in the city of Indianapolis state of Indiana. I would like to take the time to express why I strongly believe you should consider green seen Mr. Anthony's release.


I have known Mr. Anthony Spradley now personally for a little over 30 years growing up and hanging out in some of the same neighborhoods and places we were able to see one another often. He and I have first cousins that has twins by one another which allowed our families to know one another very well. Anthony would often stop by one of my favorite Great Aunts and spend time with the family having cookouts and parties, it wasn't a day that when he came he wasn't welcome and properly greeted by all of the elders as well as our age group family members. Anthony has a smile that lights up the room! He always assisted my elderly family which sometimes included my Grandmother in making food or sharing food if he had what they wanted. Anthony and I both have enormous support from both families and we all are well acquainted Anthony has always shown a lot of love for his Mother they are very close, it pains him to have put this amount of stress on her throughout these years of his incarceration. He worries often, about her health conditions and if she's properly going to get medical care as needed Anthony was also a wonderful and supportive father to his only son Anthony JR. Who he has trite tremendously to help provide him with proper guidance and advice throughout the last 24 years that he has been away from him.  Anthony has been the big brother and sometime Father Figure in his sibling's life. Since being incarcerated he has had to grieve the death of a sister which she desperately wishes he would have been home two see her for the last time. My heart is heavy knowing that he had to grieve away from his mother at a time she needed him the most. Since the life sentence of Anthony his mother's health has declined, not she's very concerned as well as the community Not understanding how a non-violent First-time offender could receive such a harsh and inhumane sentence.


Since Anthony's sentence I have been in communication with him for 16 years of his time, Anthony has embraced his love and sadness for his community call wishing he was home to help stop this violence. He has gained a lot of knowledge about the Bible and constantly keeps faith and a positive attitude, most letters his attitude is of gratitude being a reformed citizen and of Faith. Anthony has had numerous conversations with my children and myself helping me to mentor my three (3) young men and daughter

how to be a successful educated citizen and hopes to give back in any way that they can. Since my 19-year-old daughter has heard about Anthony's case, she has decided to go to study law. Her plans are to help those serving unjust sentences. I also have two children that has health issues and he always encourage them to keep pushing through the illness and be the best they can be. My oldest has major r respect toward Anthony because he stays positive in his life when he should feel defeated and alone as in reality he is.

Speaking and writing to Anthony for all these years I know he is a kind and gentle soul. I have a lot of respect for him and his wisdom he encourages me when I feel overwhelmed and sorry that my children has a Father that is free and doesn't think or care how they are in this world. While Anthony has accepted the opportunity to mentor them and help them stay away from violence and crimes.

Once Anthony is released I will be a willing support system for him and continue to pray and fast with him. I only pray that he is granted the release to help raise his seven grandchildren and join in the fight to stop the violence in our communities, provide mentoring for at risk youth and help keep young men that was his age of 28 years old to stay out of the judicial system for violence and drugs. As I studied in Cognitive Behavior Theory data shows That's when change in thinking has changed the thinking. I would also like the Your Honor to visit the Bible in the book of Ecclesiastics chapter 7 versus seven through 12 which I have copied a attachment to read. These scriptures remind me of Anthony's chapter and Humility of his past and future.

Respectfully, Tamara Harris P.C.

1941 W. Riveria Street Indianapolis, Indiana 46260

317)730-6311

Anthony Spradley
4640 Cherry lane
Indianapolis, In 46228
2/1/2021

Dear Judge Magnus Stinson:

I am writing on behalf of my father Anthony Spradley. Over the past 24 years, I have had to face the obstacles of life without my father being physically present. In those years, my father has always attempt to make it clear, that even if he is not here with me in person he would do whatever is necessary to coach me along the way. Long trips to different states to visit him, multiple page letters and frequent telephone conversations was his means to keep his promise. I am currently 29 years old. The same age that he was when he had to go away to pay his debt to society. As I am a man now myself, and I reminisce on my own life, I understand the wisdom that you gain from choices you make in your yonger years. I am my father's only child. I was only able to spend a short time With him as a free citizen. I have memories of him that influenced my character. My father, would make sure he presented a everlasting impression to whomever he came in contact with. Based on the era of the 1980's and 90's many poverty strickened individuals chose narcotics as a mean to and end. My father being an example of one who made that choice, never used violence to accomplish any goal. Who needs violence? When the objective was to feed families and strive to create a different future for the next generation, was a question stated by a elderly women when my father was spoken of to me. He always presented himself as a gentleman. I was fortunate to attend a private school in Indianapolis. Where there were only 3 children of color in my entire grade class. My father would bring cupcakes for everyone. He also would bring my dog for show and tell. Once my father was arrested, the news circulated quickly around the school. My teachers and Principal who had the chance to meet my father, would send words of encouragement and had me understand that my father was a good man and to not let anyone discourage me from that truth. Keeping your word, treating people the way you would like to be treated were characteristics he made sure I knew were key to becoming a man. With the ambition and focus he instilled in me prepared me for college at Central State University and a full time career in real estate. If released my father would also come home to be greeted by my seven children, with hopes of being able to create memories that I wasn't able to do myself. My father is now in his fifties, and based on the knowledge I have acquired as a man myself I understand growth and development due to circumstances. You can never change the past, but you have the power to writr your own future. My father can help today's youth. With a story of redemption and consequence based on one's choices in life. My father is the perfect example to express the importance of decision making in this brief time we call life. Wasted talent, is a topic that we discussed with each other in our many conversations. I believe that if he has a chance at freedom again. He can save many lives with his own knowledge and wisdom making today's youth understand the importance of not wasting your own talent on negativity and false narratives. If my father gets another opportunity at life. I believe he will be able to offer what many of today's youth is lacking and that is a guide a reminder of what not to do and the power of redemption from prayer and family support to help us surpass our shortcomings. Thank you.

Kelli McGruder
10072 Korbel Blanc St.
Las Vegas, NV 89178
Email: kmcgruder@icloud.com

February 2, 2021

The Honorable Judge Jayne Magnus Stenson
Miami, FL 33137

RE: Character Reference for Anthony Spradley

The aim of this letter is to present the good character of Anthony Spradley. I have known Anthony for the past 24 years when I resided in Indianapolis. I want to bring to your light the kind of person that he is despite the grave allegations that he has faced in recent time. I can confirm that he is a true gentleman and is always true to his word. His enthusiasm has led to many good works in society. Anthony has matured in the time he has been away from his friends and family. He has become knowledgeable and considerate in areas that will serve well in society today.

I am very aware of the charges that Anthony has faced. However, he has family and friends that will support him mentally, physically, and financially and continue to encourage him to stay on the right track at all times. His support system is sound and solid. I plead for his leniency. He is a well-mannered gentleman, and I am sure he will learn from this experience and will not think of repeating it.

I hope you look into this matter and consider this character reference letter . Anthony will continue to strive and make amends. I am sure with the support of myself, his friends and family we will get to see his good works bringing fruitful results to our society again.

Thank you for your time and consideration.

Sincerely,

Kelli McGruder

Exhibit E



| **Individualized Needs Plan - Program Review   (Inmate Copy)** | | | SEQUENCE: 00763809 |
|---|---|---|---|
| Dept. of Justice / Federal Bureau of Prisons | | | Team Date: 08-17-2020 |
| Plan is for inmate: SPRADLEY, ANTHONY D   05772-028 | | | |

| | | | |
|---|---|---|---|
| Facility: | LVN  LEAVENWORTH USP | Proj. Rel. Date: | UNKNOWN |
| Name: | SPRADLEY, ANTHONY D | Proj. Rel. Mth: | LIFE |
| Register No.: | 05772-028 | DNA Status: | COP01653 / 05-07-2010 |
| Age: | 51 | | |
| Date of Birth: | 03-19-1969 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | ELECTRIC 1 | ELECTRIC 1 | 01-31-2018 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | ESL HAS | ENGLISH PROFICIENT | 02-15-2000 |
| LVN | GED HAS | COMPLETED GED OR HS DIPLOMA | 02-23-2000 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LVN | C | ADVANCED CHESS | 09-30-2019 | 12-03-2019 |
| LVN | C | H.E.A.R.T. KCKCC-12-3PM | 12-10-2018 | 04-11-2019 |
| LVN | C | STRESS AND YOUR BODY P1 | 11-29-2018 | 02-28-2019 |
| LVN | C | HOW STOCK MARKET WORKS PART 1 | 11-27-2018 | 02-28-2019 |
| LVN | C | EXPERIENCING HUBBLE | 11-27-2018 | 02-28-2019 |
| LVN | C | EXPERIENCING HUBBLE | 11-26-2018 | 02-28-2019 |
| LVN | C | HOW STOCK MARKET WORKS PART 1 | 11-28-2018 | 02-28-2019 |
| LVN | C | CAREER EMPLOYMENT - AFTERNOON | 12-10-2018 | 01-07-2019 |
| LVN | C | PARENTING 6:00 PM TO 8:00 PM | 08-27-2018 | 09-26-2018 |
| MAN | C | FCI PARENTING PHASE 2 | 07-28-2016 | 09-18-2017 |
| MAN | C | VT ELECTRICAL PM: T,W,R | 10-27-2016 | 04-06-2017 |
| MAN | C | FCI PARENTING PHASE 1 | 04-26-2016 | 07-28-2016 |
| MAN | C | RPP#5 RELEASE PREP PROG A&O | 03-03-2016 | 03-03-2016 |
| POL | C | REAL ESTATE | 06-30-2015 | 09-29-2015 |
| POL | C | ARCHIVES WAR | 06-30-2015 | 09-29-2015 |
| POL | C | PERS GRWTH 7 HABITS RPP6 WED | 01-07-2015 | 03-24-2015 |
| POL | C | ACE SECRET SCI | 04-13-2014 | 10-20-2014 |
| POL | C | ACE NATURE ASSN | 04-13-2014 | 07-21-2014 |
| POL | C | 3 FINANCIAL PLANNING 6:30-8:30 | 06-17-2013 | 10-19-2013 |
| POL | C | FOOD PREP & UNDER | 06-17-2013 | 10-19-2013 |
| POL | C | BASIC MATH 6:30-8:30PM | 11-26-2012 | 02-23-2013 |
| POL | C | REAL ESTATE | 11-27-2012 | 02-23-2013 |
| POL | C | ACE FORKLIFT CLASS | 11-28-2012 | 02-23-2013 |
| COP | C | RPP HEALTH/NUTRITION #1 | 05-09-2012 | 05-09-2012 |
| COP | C | TUE-WED 7:30-3:30 VT CUST MAIN | 04-25-2011 | 09-15-2011 |
| COP | C | HEALTH/NUTRITION CLASS | 07-29-2011 | 09-14-2011 |
| COP | C | ADVANCED JUMP ROPE | 11-27-2010 | 03-05-2011 |
| COP | C | ACE CREATE WRITE M/W 1830-1930 | 10-16-2010 | 02-01-2011 |
| COP | C | ACE INTRO FINANCE:M/W1830-1930 | 07-31-2010 | 10-18-2010 |
| COP | C | INTERMEDIATE JUMP ROPE | 08-30-2010 | 10-15-2010 |
| COP | C | BEGINNING JUMP ROPE | 06-09-2010 | 09-22-2010 |
| COP | C | SEVEN HABITS AM (ACE) | 05-05-2010 | 08-27-2010 |
| COP | C | PSY SERVICES ANGER MGMT | 04-01-2010 | 04-01-2010 |
| THP LCP | C | WELLNESS CLASS-BASIC NUTRITION | 03-01-2009 | 06-21-2009 |
| BSY | C | LEADERSHIP CLASS FOR ONE WAY | 07-25-2008 | 10-29-2008 |
| BSY | C | COURAGE TO HEAL PT.1;T;6:30PM | 04-17-2008 | 06-10-2008 |
| BSY | C | DIABETIC WORKSHOP(RPP#1) | 02-26-2008 | 02-26-2008 |



## Individualized Needs Plan - Program Review    (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SPRADLEY, ANTHONY D  05772-028

SEQUENCE: 00763809

Team Date: 08-17-2020

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| BSY | C | ELL ORIENTATION | 01-09-2007 | 01-09-2007 |
| BEC | C | HALFWAY HOUSE REGS. | 09-10-2003 | 09-10-2003 |
| BEC | C | VT MASONRY CLASS 1230-1530 | 04-04-2002 | 10-04-2002 |
| BEC | C | BLUE PRINT READING WEIKEL PM | 05-22-2000 | 07-21-2000 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 01-29-2010 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-22-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| PAPER | LEGACY PAPER MEDICAL RECORD | 04-22-2020 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 01-29-2010 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-25-2012 |

### Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| ED COMP | DRUG EDUCATION COMPLETE | 09-15-2010 |
| NR WAIT | NRES DRUG TMT WAITING | 09-05-2017 |

### FRP Details

**Most Recent Payment Plan**

**FRP Assignment:**   **PART**    **FINANC RESP-PARTICIPATES**    **Start: 09-06-2017**

Inmate Decision:  **AGREED**    **$25.00**    Frequency: **QUARTERLY**

Payments past 6 months:    **$50.00**    Obligation Balance: **$7,900.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $900.00 | ($169.51) | IMMEDIATE | EXPIRED |
| | | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | |
| 2 | FINE | $10,000.00 | $7,900.00 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|--------------|------------|------|-------------|--------|--------|
| | 06-10-2020 | LVN | PAYMENT | INSIDE PMT | $25.00 |
| | 03-12-2020 | LVN | PAYMENT | INSIDE PMT | $25.00 |

### Payment Details

Trust Fund Deposits - Past 6 months: $1,770.29    Payments commensurate ?  Y

New Payment Plan:    ** No data **

### Progress since last review

He has a balance of $7,900 remaining on his FRP obligation. He has not received any incident reports in the last six months. Completed VT HEART. Has a work assignment as Electric 1.

### Next Program Review Goals

Make payments toward FRP obligation.

### Long Term Goals

Complete FRP obligation by 8/21.

### RRC/HC Placement

No.
Management decision - Life sentence .

### Comments

NOTE: Perspective visitors must be approved and listed correctly on the Inmate Visitor List prior to arrival.  All immediate family members



**Individualized Needs Plan - Program Review    (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: SPRADLEY, ANTHONY D  05772-028

SEQUENCE: 00763809

Team Date: 08-17-2020

wishing to visit must be listed on the approved Visitor List.  Upon arrival, all visitors age 16 and older must present valid state or government-issued photo identification.

Release Preparation Program (RPP).  RPP is composed of programs within 6 core topics: 1-Health/Nutrition, 2-Employment, 3-Financial Planning, 4-Community Resources, 5-Release Information and 6-Personal Growth.  At least one class/program is required for each core topic.

Residential Reentry Center (RRC=halfway house)/2nd Chance Act review closer to release.